IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ANGELA W. SEGARS f/k/a ANGELA W. ODOM, an individual, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No.: ) ) |
| HYUNDAI CAPITAL AMERICA, INC. d/b/a KIA MOTORS FINANCE, a corporation, | ) ) ) ) |
| Defendant. | ) ) |

## COMPLAINT

**COMES NOW** the Plaintiff, by and through counsel, and for Plaintiff's Complaint against the Defendant states as follows:

1. This action arises out of Defendant's violations of the Fair Credit Reporting Act[1] (15 U.S.C. § 1681 et seq. [hereinafter "FCRA"]), which have directly resulted in Plaintiff not being able to purchase her first home due to the false credit reporting by Defendant.

## JURISDICTION

2. Personal jurisdiction exists over Defendant as it has the necessary minimum contacts with the State of Alabama and this suit arises out of its specific

---

[1] Any reference the FCRA or any part thereof encompasses all relevant parts and subparts thereto.

conduct with Plaintiff in Alabama. All the actions described in this suit occurred in Alabama.

3. Subject matter jurisdiction exists under federal question jurisdiction (28 U.S.C. Section 1331).

## VENUE

4. Venue is proper as Plaintiff lives in Alabama and the Defendant does business in this judicial district.

## PARTIES

5. Plaintiff Angela W. Segars f/k/a Angela W. Odom (hereinafter "Plaintiff") is a natural person who is a resident of Alabama.

6. Defendant Hyundai Capital America, Inc. d/b/a Kia Motors Finance ("Defendant" or "Kia") is a foreign company that engages in the business of reporting consumer credit information to credit reporting agencies. It conducts business in this Judicial District. Its principal place of business is the State of California and it is incorporated in California.

## FACTUAL ALLEGATIONS

### Plaintiff purchases a 2012 Kia in 2012 with Gap insurance

7. On or about August 1, 2012, Plaintiff purchased a 2012 Kia from Kia and it was financed through Kia.

8. Plaintiff purchased, from Kia, Gap insurance that would pay the difference between the value of the car and the amount owed if the car was totaled.

### Plaintiff's 2012 Kia is wrecked and the loan is paid off

9. Several weeks later Plaintiff was in a wreck and the car was totaled.

10. Kia told Plaintiff it would handle the claim with the primary insurance company to recover the value of the 2012 Kia.

11. And Kia told Plaintiff it would file the Gap insurance to cover the "gap" in the value and the amount owed.

12. Kia took these actions and the loan was fully paid without any problem.

### Plaintiff purchases a 2013 Kia with Gap insurance

13. Needing a vehicle as Plaintiff's was totaled, on or about September 26, 2012, Plaintiff again took out a loan with Defendant Kia – this time on a 2013 Kia Forte.

14. Defendant Kia again sold to Plaintiff a "Gap" insurance, which would pay the difference or "gap" between the value of the Kia and the amount owed if the Kia was totaled.

### Plaintiff's 2013 Kia is totaled in a wreck in 2013

15. On October 21, 2013 Plaintiff wrecked the vehicle (2013 Kia) and Plaintiff's 2013 Kia was totaled.

3

16. Plaintiff promptly reported this to Kia and Kia said it would file the Gap insurance and it would get the primary insurance payment – exactly as had occurred one year before on the 2012 Kia.

17. Plaintiff's insurance paid Kia and the Gap insurance would pay the rest of the amount owed.

### 18 months later Plaintiff discovers Kia is falsely reporting the 2013 Kia on Plaintiff's credit reports

18. Plaintiff discovered the last week of May 2015, that Plaintiff's credit reports falsely showed balances of the whole amount owed when Plaintiff's insurance had paid over $14,000 to Kia for the then value of the 2013 Kia at the time of the wreck.

19. The credit reports also showed that Kia was reporting that Plaintiff was late in payments since the wreck.

### Plaintiff's first dispute to the credit reporting agencies under the FCRA

20. Plaintiff disputed this to the credit reporting agencies and Defendant Kia corrected the credit reporting to show Plaintiff had not been late since the wreck and did not owe the full amount of the loan.

4

## **Plaintiff is looking to buy a home and discovers Kia is still reporting the "gap" amount as owed**

21. But Plaintiff noticed Kia was still reporting $5,401.00 owed, which was the amount the Gap insurance would pay.

22. Plaintiff had recently married (2015) and was looking at purchasing a home.

23. As a teacher, owning a home has been a life long dream of Plaintiff.

24. Part of preparing to purchase a home is to make sure that your credit reports are accurate.

## **Plaintiff calls Kia repeatedly to get her credit reporting fixed**

25. Given the continued inaccuracy of Kia's reporting (that a balance was owed), this led Plaintiff to not only do the Fair Credit Reporting Act disputes to the credit reporting agencies but also to talk to Kia directly.

26. Plaintiff contacted Kia on several occasions about this and Kia told Plaintiff that Kia had not filed the Gap insurance claim.

27. Defendant Kia promised to file the claim.

28. In the late summer of 2015, Defendant Kia told Plaintiff that it had filed the claim on the wrong Kia loan so the claim was denied.

29. Kia filed the Gap claim on the 2012 Kia, not the 2013 Kia.

30. But the 2012 Kia had already had a Gap claim filed and paid – in 2012.

31. Naturally, one cannot get double payment for the same vehicle.

32. Plaintiff again requested that Kia fix the false credit reporting showing she owed a balance – she owed no balance as Kia had sold her the Gap insurance, Kia financed it, and Kia promised to file the claim.

33. Kia then promised Plaintiff that Kia had corrected this to file it on the correct loan – the 2013 Kia loan.

34. Plaintiff told Kia Plaintiff was buying a house and had to have this corrected.

### Kia knows Plaintiff does not owe any money on the 2013 Kia so it only attempts to force Plaintiff to pay this unowed money by false credit reporting

35. Despite Defendant Kia causing this issue with its refusal to file the Gap insurance claim on the right vehicle, even nearly two years after the wreck, Defendant Kia claims on Plaintiff's credit reports that she owes $5,401.00.

36. It is important to note that <u>nowhere else</u> does Kia claim Plaintiff owes any money on the 2013 Kia loan.

37. No bill has ever been sent to Plaintiff since the 2013 wreck.

38. No phone call has been made to Plaintiff requesting payment since the 2013 wreck.

39. When Plaintiff has had repeated (and frustrating) calls with Kia about this fiasco, no representative of Kia has ever said, stated, hinted, or even implied that Plaintiff owes any money on the 2013 Kia.

40. This is because Plaintiff owes no money on the 2013 Kia.

41. Plaintiff even purchased a new vehicle and, ironically, the dealership financed it through Defendant Kia.

42. This would never have happened if Plaintiff actually owed money on the 2013 Kia.

43. If Plaintiff really had an outstanding balance of over $5,000 that had been owed since October 2013, Kia would never have allowed Plaintiff to finance another Kia.

44. Plaintiff owes no money on the 2013 Kia – this is why Kia has again financed a car for Plaintiff.

**Plaintiff disputes, again, the false credit reporting by sending a detailed letter with attachments to Kia and the credit reporting agencies**

45. Plaintiff in November 2015 sent a very detailed dispute letter with many attachments to Kia, Equifax, Experian, and TransUnion, disputing the balance owed on the 2013 Kia and that it was an open account.

46. Plaintiff explained in great detail how the amount of the debt (current balance) and the monthly payments pushed her "debt to income" ratio beyond the point where she could qualify for her home loan.

47. Plaintiff informed Kia (and the credit reporting agencies) that she had a contract on the home she wanted to buy and the Kia reporting is the only reason she could not close on the home.

7

48. And that this impacted the sellers who had a contract to buy a house but could not do so until they sold their house to Plaintiff.

49. In short, Kia knew exactly what it was doing wrong and exactly the tremendous damage it was causing Plaintiff and others by its malicious decision to continue to falsely report the account on Plaintiff's credit reports.

50. Kia received this dispute letter directly and has failed to even show the slightest courtesy in responding to Plaintiff.

51. No apology has come from anyone at Kia.

52. Kia has no regret over what it has done and is continuing to do to both Plaintiff's family and the seller of the house Plaintiff wants to buy.

53. Nor to any realtor involved or mortgage company involved.

54. Kia's policy and procedure, which will be established through its repeated conduct here and with other victims across the country, is to show no concern or regard for any of its wrongful actions, as it believes it is above the law in dealing with American consumers as opposed to the US government.

55. All involved (mortgage company, realtor for seller, Plaintiff) have tried to get Kia to fix the false credit reporting but have been stonewalled.

56. In response to the dispute letter, the credit reporting agencies contacted (individually) Kia to ask Kia whether to keep the balance owed and the open account status.

57. Kia, knowing full well the falseness of its reporting, instructed the credit reporting agencies to keep the false information on Plaintiff's account.

58. Kia did this knowing it had destroyed the opportunity for Plaintiff to purchase her home.

59. Defendant Kia did not perform any type of reasonable investigation.

60. The credit reporting agencies properly notified Defendant Kia in accordance with the FCRA of the dispute by Plaintiff.

61. Defendant failed to properly investigate this dispute, as if Defendant Kia had properly investigated, the account would show that it is closed and nothing is owed.

62. The Defendant Kia was provided with more than sufficient information in the dispute and in its own internal sources of information to conduct an investigation and to conclude that the account complained of was being reported incorrectly.

63. Defendant Kia has promised through its subscriber agreements or contracts with the credit reporting agencies to accurately update accounts but Defendant Kia has willfully, maliciously, recklessly, wantonly, and/or

negligently failed to follow this requirement as well as the requirements set forth under the FCRA, which has resulted in the intended consequences of this information remaining on Plaintiff's credit reports.

64. Defendant Kia maliciously, willfully, intentionally, recklessly, and/or negligently failed to review the information provided in the disputes and that was already in its files and to conduct a reasonable investigation on Plaintiff's disputes, which led as a direct result and consequence to all of the Defendant either failing to delete information found to be inaccurate, failing to replace the inaccurate information with accurate information, and/or reinserting the information without following the dictates of the FCRA.

65. One single example: If Defendant Kia had reasonable procedures in place in its investigation and reporting, it would have noticed the oddity of an account showing Plaintiff as owing $5,401.00 but not making any payments while simultaneously not reporting Plaintiff as late since the wreck and extending a new loan to Plaintiff.

66. If a human being with any concern over the solemn duty of credit reporting had looked at this, that human being would have known this was wrong and would have fixed the credit reporting.

67. But Kia does not allow its employees the "discretion" to fix blatant and damaging errors – instead there exists at Kia a systemic problem of refusing

to allow errors to be corrected, even when the consumer makes repeated requests.

### **Plaintiff has been horribly damaged by Kia and cannot purchase her home**

68. The conduct of the Defendant has proximately cause Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

69. Plaintiff reapplied for her home loan <u>after</u> the malicious conduct of Kia in refusing to fix her credit reports in response to the now second valid FCRA dispute.

70. Plaintiff was <u>turned down for the sole reason of the Kia reporting</u>.

71. As Kia knew and intended, Plaintiff has lost the ability to purchase a home.

### **Kia knows exactly what it has done to Plaintiff – all has been done according to the plan of Kia**

72. It is a practice of Defendant Kia to maliciously, willfully, recklessly, wantonly and/or negligently ignore and refuse to follow the requirements of the FCRA.

73. Defendant is a sophisticated business and it knows its conduct is wrong.

74. All actions taken by the Defendant were done with malice, were done willfully, and were done with either the desire to harm Plaintiff and/or with the knowledge that its actions would very likely harm Plaintiff and/or that its

11

actions were taken in violation of the FCRA and/or that it knew or should have known that its actions were in reckless disregard of the FCRA.

75. Defendant has engaged in a pattern and practice of wrongful and unlawful behavior with respect to accounts and consumer reports and as such Defendant is subject to punitive damages and statutory damages and all other appropriate measures to punish and deter similar future conduct by these Defendant and similar companies.

76. Defendant is liable to Plaintiff through the doctrine of Respondeat Superior for the wrongful, intentional and negligent acts, errors, and omissions done in violation of federal law by its employees and agents.

## CAUSES OF ACTION

### COUNT I.

### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681 et seq.

77. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

78. Defendant Kia is an entity that, regularly and in the course of business, furnishes information to one or more consumer reporting agencies about its transactions or experiences with any consumer and therefore constitutes a "furnisher," as codified at 15 U.S.C. § 1681s-2.

79. Plaintiff notified the credit reporting agencies directly of a dispute on the Defendant Kia account's completeness and/or accuracy, as reported.

80. The credit reporting agency properly notified Defendant Kia of Plaintiff's dispute in accordance with the FCRA requirements.

81. Plaintiff also directly notified Kia of her dispute and provided all documents so Kia cannot argue it did not have its own internal documents – which it has had at all times – as Plaintiff sent them to Kia.

82. Kia has its own file of the conversations, notes, memos, etc. showing that this account is paid in full.

83. And the credit reporting agencies sent the appropriate documentation to Kia.

84. Defendant failed to delete information found to be inaccurate, reinserted the information without following the FCRA, or failed to properly investigate Plaintiff's disputes.

85. Plaintiff alleges that Defendant failed to conduct a proper and lawful reinvestigation.

86. All actions taken by the Defendant were done with malice, were done willfully, and were done with either the desire to harm Plaintiff and/or with the knowledge that its actions would very likely harm Plaintiff and/or that its actions were taken in violation of the FCRA and/or that it knew or should have known that its actions were in reckless disregard of the FCRA.

87. All of the violations of the FCRA proximately caused the injuries and damages set forth in this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays that judgment be entered against Defendant for all damages allowable (including statutory, actual, compensatory, nominal and punitive the total of which Plaintiff claims more than $750,000.00), costs, expenses, fees, injunctive relief to prevent further violations, and for such other and further relief as may be just and proper.

Respectfully Submitted,

John G. Watts (ASB-5819-t82j)
M. Stan Herring (ASB-1074-n72m)
Watts & Herring, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
(888) 522-7167 *facsimile*
john@wattsherring.com
stan@wattsherring.com
*Attorneys for Plaintiff*

**PLAINTIFF DEMANDS A TRIAL BY JURY IN THIS CAUSE.**

Attorney for Plaintiff

**Serve defendant via certified mail at the following address:**

Hyundai Capital America, Inc.
d/b/a Kia Motors Finance
c/o National Registered Agents, Inc.
2 N. Jackson Street, Suite 605
Montgomery, Alabama 36104